IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

BARNELL E. ELLIS,

      Petitioner,                             Case No. 2:13-cv-682

   v.

WARDEN, ROSS CORRECTIONAL         JUDGE GEORGE C. SMITH
INSTITUTION,

                                       Magistrate Judge Kemp

     Respondent.

## REPORT AND RECOMMENDATION

      Petitioner, Barnell E. Ellis, a prisoner at the Ross Correctional Institution located in Chillicothe, Ohio, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. The case is now before the Court on the petition, return of writ, Petitioner's reply, and the exhibits of the parties.  For the reasons that follow, the Magistrate Judge **RECOMMENDS** that petitioner's claim be **DENIED**.

## I.  PROCEDURAL HISTORY

      On November 2, 2010, Petitioner was indicted by a Franklin County, Ohio grand jury on charges of murder, carrying a concealed weapon, tampering with evidence, and attempted murder, with specifications.  He waived a jury trial on the carrying a concealed weapon and tampering with evidence charges, and was tried by a jury on the remaining two counts.  On April 12, 2011, the jury found him not guilty on one count and hung on the other.  A bench trial on the other counts followed, and a judge found Petitioner guilty of

carrying a concealed weapon and entered a judgment of acquittal on the tampering with evidence charge.

In September, 2011, Petitioner was retried by a jury on the murder charge, and found guilty. In a judgment entry filed on October 11, 2011, the trial judge sentenced Petitioner to a term of fifteen years to life for murder, with an additional three years consecutive due to use of a firearm, and eighteen months on the CCW charge, which was run concurrently with the sentence on the murder charge. *Return of Writ*, Exhibit 4.

Petitioner filed a timely notice of appeal to the Tenth Appellate District Court of Appeals. In his brief, he raised a single assignment of error:

> THE DEFENDANT WAS DEPRIVED OF HIS RIGHT TO A FAIR TRIAL, THE RIGHT TO PRESENT A DEFENSE, AND DUE PROCESS OF LAW WHEN THE TRIAL COURT GAVE CONFUSING AND MISLEADING INSTRUCTIONS ON THE LAW OF SELF-DEFENSE. THIS ERROR WAS FURTHER COMPOUNDED BY THE PROSECUTOR'S ERRONEOUS AND MISLEADING MISSTATEMENTS TO THE JURORS ON THE LAW OF SELF-DEFENSE SINCE THE ERRONEOUS AND MISLEADING MISSTATEMENTS WOULD HAVE CAUSED THE JURY TO REJECT THE LAWFUL AND VALID CLAIM OF SELF-DEFENSE PRESENTED BY THE DEFENDANT.

In an opinion issued on August 9, 2012, the court of appeals overruled Petitioner's assignment of error and affirmed the judgment of the trial court. *State v. Ellis*, 2012 WL 3224129 (Franklin Co. App. Aug. 9, 2012). On September 24, 2012, Petitioner filed a notice of appeal with the Ohio Supreme Court from his direct appeal. He set forth a single proposition of law:

2

> It is confusing and misleading to instruct the jurors, in a case of self-defense involving deadly force, that a defendant forfeits his right to act in self-defense if he cannot prove that he was not at fault in creating the situation giving rise to the affray and did not violate any duty to avoid the danger.  A court must instruct the jurors with respect to what constitutes being at fault and describe in detail the legal duties one must abide by in avoiding the danger.  In order to be at fault in a manner that forfeits the right to engage in self-defense, the actor, with the intent to cause death or great bodily harm, must have provoked the other person to the use of deadly force by actions indicating that the use of deadly force was justifiable.  A person has the right to self-defense against thel (sic) unjustifiable use of deadly force.

On January 23, 2013, the Ohio Supreme Court declined to accept the appeal for review.  *State v. Ellis,* 134 Ohio St.3d 1419 (January 23, 2013).  This timely petition followed.

## II.  THE FACTS

The facts of this case were summarized by the state court of appeals, in its Opinion of August 9, 2012, as follows.

> Barnell E. Ellis, defendant-appellant, appeals the judgment of the Franklin County Court of Common Pleas, in which the court found him guilty, pursuant to a bench trial, of carrying a concealed weapon which is a violation of R.C. 2923.12 and a fourth-degree felony, and guilty, pursuant to a jury verdict, of murder with gun specification which is a violation of R.C. 2903.02 and an unclassified felony.

> Appellant met Cassandra Dunlap in September 2010. According to appellant, the two began a romantic relationship although Cassandra denied such. Appellant also had a girlfriend or fiancée, Kimberly Tilley, at the time. Appellant and Cassandra smoked marijuana together, along with Cassandra's brother, Armond Paul Dunlap, Jr. ("J.R."). In October 2010, appellant asked Cassandra if he could borrow J.R.'s scales. Appellant picked up the scales from J.R. on Friday, October 22, 2010, and J.R. told appellant he wanted the scales back by Saturday. Appellant did not return the scales on Saturday. On that same Saturday, according to appellant, Cassandra began calling appellant. Appellant was with Tilley, so he did not answer the calls.

3

Eventually, appellant answered a call from a phone number he did not recognize. The caller threatened appellant, and appellant heard Cassandra in the background start threatening him. Appellant changed his cell phone number that day and began carrying a gun.

On October 24, 2010, J.R. and Cassandra drove to a neighborhood store to buy cigarettes. Around the same time, appellant walked to the same store. He met a woman along the way, Karen Mundel, and walked with her the rest of the way. When they arrived at the store, appellant saw J.R.'s car in the parking lot. Appellant entered the store, and Cassandra began asking appellant about J.R.'s scales. Although J.R. told appellant that it would be okay if appellant returned the scales later, Cassandra and appellant began arguing, prompting appellant to announce he was "strapped," according to a store employee, which meant he was carrying a gun.

Cassandra and J.R. left the store, and appellant followed them. Outside the store, appellant continued to follow Cassandra and J.R. and appellant and Cassandra continued to argue. Appellant testified that J.R. walked to his car, rummaged inside it, and then returned to the group, although Cassandra denied such. Cassandra testified that appellant and J.R. started to argue regarding something offensive appellant said to J.R. When Mundel exited the store, the four of them walked toward the back of the building with Cassandra, J.R., and appellant still arguing. According to appellant, although J.R. told appellant to call him to arrange the return of the scales, when appellant tried to input J.R.'s phone number into his cell phone, Cassandra took his phone and told him he would get it back after he returned the scales, all of which Cassandra denied. Appellant testified that he then began walking away, at which point Cassandra told J.R. that she had given appellant some birthday money belonging to J.R.'s son, causing J.R. to become angry. Cassandra denied she ever said anything to J.R. about birthday money. Appellant testified that J.R. punched him, and the two engaged in a short physical altercation. Cassandra testified it was appellant who swung at J.R. first. Appellant testified that J.R. then reached into his sweatshirt pocket, and, believing J.R. was reaching for a gun, appellant shot J.R. eight times. Mundel ran away, and appellant ran to his mother's home, while Cassandra searched J.R.'s pockets looking for car keys. No gun was found in J.R.'s possession. Cassandra testified her brother has never owned a gun. Later that day, appellant turned himself in to police.

*State v. Ellis*, *supra*, at *1.

### III.  PETITIONER'S HABEAS CLAIM

Petitioner filed his habeas corpus petition in this Court on July 19, 2013.  In his petition (Doc. 3) he raises only a single ground for relief, worded identically to the claim he raised in the Ohio courts on direct appeal.   As noted above, the focus of that claim is on the correctness of the jury instructions on self-defense.  Respondent argues that Petitioner's claim was procedurally defaulted because his counsel failed to object to the jury instructions at trial, and the Tenth District Court of Appeals reviewed the claim for plain error.  In his reply, Petitioner argues that his claim was not procedurally defaulted because the state court of appeals opinion is contrary to law and because he has fully exhausted his state court remedies.

### A.  THE LAW OF PROCEDURAL DEFAULT

Congress has provided that state prisoners who are in custody in violation of the Constitution or laws or treaties of the United States may apply to the federal courts for a writ of habeas corpus. 28 U.S.C. §2254(a).  In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the state courts for consideration.  28 U.S.C. §2254(b), (c).  If he fails to do so, but still has an avenue open to him by which he may present his claims, then his petition is subject to dismissal for failure to exhaust state remedies.  *Id.*; *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) (citing *Picard v. Connor*, 404 U.S. 270, 275-78 (1971)).  But if a Petitioner did not properly present

his claim to the state courts and, because of the application of state rules of procedure, he can no longer do so, he has waived (or procedurally defaulted) that claim for purposes of federal habeas corpus review.  The only way he can overcome that default is to demonstrate cause for his failure to have presented the claim correctly to the state courts, and to show that he was prejudiced by the state courts' refusal to consider his claim on its merits. *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle v. Isaac*, 456 U.S. 107, 129 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is waived by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id*. Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id*. Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim. *Id*. Finally, if the Court has determined that a state procedural rule was not complied with, and that the rule was an adequate and independent state ground, then the petitioner must demonstrate that there was cause for him not to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional error. *Id*. This "cause and prejudice" analysis applies to failures to raise or preserve issues for review at the appellate level. *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985).

6

### B.  APPLICATION TO THE FACTS

The Tenth District Court of Appeals began its review of Petitioner's sole assignment

of error in this fashion:

> We first note that appellant failed to object to the jury instructions regarding self-defense at trial. Generally, the failure to object at trial or to request a specific instruction waives all but plain error with respect to the jury instructions. *State v. Underwood*, 3 Ohio St.3d 12 (1983), syllabus. Crim.R. 52(B) provides that the court may consider errors affecting substantial rights even though they were not brought to the attention of the trial court. " 'Plain error is an obvious error * * * that affects a substantial right.' " *State v. Yarbrough*, 95 Ohio St.3d 227, 244, 2002–Ohio–2126, ¶ 108, quoting *State v. Keith*, 79 Ohio St.3d 514, 518 (1997). An alleged error constitutes plain error only if the error is obvious and, but for the error, the outcome of the trial clearly would have been different. *Id.* " '[N]otice of plain error is taken with utmost caution only under exceptional circumstances and only when necessary to prevent a manifest miscarriage of justice.' " *State v. Hairston*, 10th Dist. No. 01AP–252 (Sept. 28, 2001), quoting *State v. Lumpkin*, 10th Dist. No. 91AP–567 (Feb. 25, 1992).

*State v. Ellis, supra,* at *4.  The court went on to examine whether the giving of the

challenged instructions constituted an abuse of discretion.  Since, in Ohio, "[w]hether jury

instructions correctly state the law is a question of law that an appellate court reviews de

novo," *State v. Calderon*, 2007 WL 259251, *11 (Franklin Co.  App.  Jan. 30, 2007), it is evident

that in Petitioner's case, the state court performed only a plain error review.

The effect of failing to object to a jury instruction at trial and obtaining only plain

error review on appeal has been addressed on numerous occasions both by the United

States Court of Appeals for the Sixth Circuit, in decisions binding on this Court, and by this

Court itself.  Beginning with the Court of Appeals, in cases such as *Gulertekin v.*

*Tinnelman-Cooper*, 340 F.3d 415, 423 (6th Cir. 2003), that court has held that "the fact that it [the state court] found the procedural problem (defense counsel's failure to object) paramount, and examined only whether this holding would constitute plain error (or manifest injustice), is sufficient to foreclose federal court review on habeas." The petitioner in that case, like Petitioner here, did not object at trial to certain jury instructions given by the trial judge, and the Ohio Tenth District Court of Appeals (the same one which reviewed Petitioner's case) began its analysis of that petitioner's appeal with the same statement it made here - that the failure to object to jury instructions is a waiver of the issue for purposes of appeal and is reviewed only for plain error. Consequently, even though the state court of appeals then discussed the issue of whether the jury instructions were correct, by doing so it did not fail to enforce the waiver which occurred when counsel did not object to those instructions at trial. The *Gulertekin* court also found that the other prerequisites for procedural default had been satisfied; that is, that Ohio's rule requiring an objection to jury instructions at trial and the waiver, for appeal purposes, which stems from not making such an objection, is an "adequate and independent ground" for the state court's decision and represents a rule that is regularly followed and enforced. Petitioner's case cannot be distinguished from *Gulertekin*, and this Court must reach the same result.

As noted, this is not the first time that this Court has confronted the same issue. Just a few examples will suffice to show that this Court consistently declines to consider the merits of challenges to jury instructions when the petitioner's counsel failed to object at trial and when the state appellate courts review the claim only for plain error. *Cooper v.*

8

*Warden, Lebanon Corr. Inst.*, 2012 WL 5511320, *11 (S.D. Ohio Nov. 14, 2012), *adopted and affirmed* 2013 WL 506447 (S.D. Ohio Feb. 11, 2013) is one such case; there, this Court held that the "failure to contemporaneously object to the jury instructions, ... constitutes a procedural default."  The same result was reached in *Coleman v. Bradshaw*, 2013 WL 3367092 (S.D. Ohio July 5, 2013), and it would be easy for the Court to list many more similar decisions.  In short, the law is clear that when an Ohio criminal defendant fails to object to jury instructions at trial, he may not raise that claim on appeal other than to ask for a "plain error" review, and he may not raise the claim at all in a subsequent federal habeas corpus petition.

There are exceptions to this rule.  As the Court noted above, if a petitioner has a good reason for not having preserved his claim for review, that may excuse the failure.  Petitioner has not offered any reason here.  Even if he did - such as by arguing that his trial attorney should have objected to the jury instructions - this Court could consider such a claim only if it was presented first to the state courts.  Petitioner has never made such a claim there, nor could he do so now due to the passage of time.  *See Edwards v. Carpenter*, 529 U.S. 446, 453 (2000)("In order to constitute cause, an ineffective assistance of counsel claim generally must " 'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.' "), *quoting Murray v. Carrier*, 477 U.S. 478, 479 (1986).

The only other way the Court can review an otherwise defaulted claim is if the Petitioner makes a showing of actual innocence.  That is very hard to do.  "It is important

to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).  The possibility that a state trial judge gave inaccurate jury instructions (although the state court of appeals concluded that the instructions were exactly the ones required to be given) is not evidence that Petitioner is innocent, and he does not appear to dispute that he shot and killed the victim, but simply that he did so in self-defense.  As one court has observed, a "[p]etitioner's claim that he acted in self-defense amounts to a claim of legal innocence, as opposed to factual innocence, and would thus not excuse his default."  *Daniels v. Rivard*, 2014 WL 502080, *4 (E.D. Mich. Feb. 7, 2014).

Consequently, there is no way for Petitioner to avoid the fact that the claim he would like this Court to review was not properly preserved for review by the state courts. His counsel did not object to the jury instructions at trial.  Although he raised this claim in the Tenth District Court of Appeals, that court did not review his claim directly; rather, it simply looked to see if the trial judge committed "plain error."  When that is what happened in state court, as the Court of Appeals said in *Gulertekin*, federal court review of the claim is "foreclose[d]."  *Id*. at 423.  No amount of argument about the merits of the claim, or whether the state court rulings violated Petitioner's federal constitutional rights, can change that.

### IV.  RECOMMENDED DISPOSITION

For all the foregoing reasons, the Magistrate Judge **RECOMMENDS** that the petition be **DENIED** on grounds of procedural default and that this case be

10

**DISMISSED**.

## V.  PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within

fourteen days of the date of this Report, file and serve on all parties written objections to

those specific proposed findings or recommendations to which objection is made,

together with supporting authority for the objection(s).  A judge of this Court shall

make a *de novo* determination of those portions of the report or specified proposed

findings or recommendations to which objection is made.  Upon proper objections, a

judge of this Court may accept, reject, or modify, in whole or in part, the findings or

recommendations made herein, may receive further evidence or may recommit this

matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and

Recommendation will result in a waiver of the right to have the district judge review

the Report and Recommendation *de novo*, and also operates as a waiver of the right to

appeal the decision of the District Court adopting the Report and Recommendation.  *See*

*Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any

adverse decision, they may submit arguments in any objections filed, regarding

whether a certificate of appealability should issue.

/s/ Terence P. Kemp
United States Magistrate Judge

11

12